ROGER BLAIN v. THE STATE.

*No. 3478.   Decided March 23.*

1. **Conspiracy—Liability of Parties Engaged in, for Whatever Act May be Committed.**—When two or more persons unite for the purpose of accomplishing some criminal object, whether they proceed in its accomplishment severally or collectively, each individual who contributes to the wrongdoing is in law responsible for the acts of all, the same as though performed by himself alone.   Again, if a person instigates or agrees with another to commit a crime, and the person so instigated commits a crime different from but one likely to be caused by or become the reasonable result of the crime intended, the instigator is an accessory before the fact, and if present at its commission is a principal thereto.   But when a party combines with or instigates others to commit a crime, and they or some one of them commit a different crime, the instigator is neither an accessory nor a principal to the crime, unless the same was committed with his assent, or was the probable result of the one he instigated or combined to do.

2. **Same—Conspiracy to Murder.**—Where on a trial of a defendant who was jointly indicted with his brother and one A. for murder, and it appeared that on the morning of the homicide A. had called deceased to account for certain threats he had heard he had made against him, and which deceased denied and demanded his author, and A. promised to produce him, and several hours afterward A. in company with defendant and defendant's brother went to a saloon, where they found deceased, and said, "We want to see you," and started toward the back door of the room as though to go out, whereupon deceased asked parties present for a pistol, and being unable to obtain one started for a Winchester which was standing in the corner of the room, and defendant's brother ordered him to stop, and as he was picking up the Winchester fired upon and killed him, neither defendant nor A. taking any part in the shooting. *Held,* that notwithstanding the fact that defendant and A. had, after A.'s first interview with deceased in the morning, each purchased a pistol, the evidence was insufficient to establish a conspiracy to kill deceased, or to commit any crime of which such killing might be the reasonable and natural consequence.

3. **Same—Charge of the Court.**—Where, in connection with the facts as above stated, the court instructed the jury, "If, therefore, you believe from the evidence that G. C. Barber was shot and killed by J. N. Blain, as charged in the indictment, and that defendant Roger Blain was present at the time by a previous agreement between himself and Otho Askey and J. N. Blain for the purpose of doing an unlawful act, such as to commit a breach of the peace, or have a personal difficulty with Barber, and with no agreement to kill him or do him such personal harm as might probably end in the death of Barber, then if you find that J. N. Blain shot and killed Barber under such circumstances, you will find the defendant herein guilty of murder in the second degree, and assess his punishment," etc. *Held,* that the charge was defective, because wanting in specification as to the wrong or unlawful act, or "breach of the peace," or "personal difficulty," which the parties contemplated.   The charge should have applied the law to the very facts of the particular case, and the specific acts upon which the liability of the parties would be dependent.

APPEAL from the District Court of Gonzales.   Tried below before Hon. George McCormick.

Appellant was jointly indicted with J. N. Blain and Otho Askey for the murder of G. C. Barber, and upon his motion a severance was had

and he was tried alone. The trial resulted in his conviction of murder in the second degree, the punishment being assessed at five years in the penitentiary. The essential facts of the case are sufficiently stated in the opinion of the court.

*Fly & McNeal*, for appellant.

*Atkinson & Abernathy* and *R. H. Harrison*, Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for murder in the second degree, with the punishment fixed at five years in the penitentiary.

Appellant was jointly indicted with one J. N. Blain and Otho Askey for the murder of G. C. Barber. There was severance, and appellant was first tried, resulting as we have stated above. J. N. Blain, the brother of appellant, shot and killed Barber under the following circumstances: About noon of the day of the homicide Otho Askey stated to Barber that he (Barber) had stated that he was going to take a buggy whip and wear his rump out. Barber stated that the man who told him this was a lying son of a bitch; that he had said no such thing about Askey; that he knew who told him that; that it was Dan Jacks. Askey said that it was not Dan Jacks, but that he would go and bring the man who heard him say it. Askey then left, and in three or four hours returned with J. N. Blain and appellant, the evidence being conflicting as to whether the parties came together. Barber was in the Sunset saloon when the parties came in. Askey said to Barber, "We want to see you." The witness Huston remarked, "Boys, you don't want any trouble." Barber replied that he was not afraid of them. "Give me a six-shooter." Huston said, "I have no six-shooter." Barber then said, "Frank [a bystander], give me a six-shooter." Frank said, "I have no six-shooter." Jo Blain said, "I will give you a six-shooter," making a motion as if to hand it to him, but did not pull it out. Jo Blain then pulled his pistol, and Barber started across the room to a Winchester in the corner. This is Huston's version.

Logan says, that "Jo Blain said, 'I will lend you a pistol if you want it,' and made a motion like he would hand it to him, but did not pull it out. When Blain told him this, Barber started toward the Winchester. Blain followed him up, pulling his pistol on him, saying, 'G—d damn you, don't you pick it up.' Blain said this two or three times before Barber got to where the Winchester was, and when Barber was in the act of picking it up, or had his hand on it, Blain fired. There were three shots fired in all. Barber fired one. It was not the last; it may have been the second." This is the substance of Logan's testimony.

704    30TH TEXAS COURT OF APPEALS REPORTS. [*Galveston,*

Peck and Woods swear, that J. N. Blain, Askey, and appellant did not come into the saloon together, but that Jo Blain, Joe Lewis, Will Woods, and Peck went to the saloon a short time before Askey and appellant. These witnesses leave it doubtful whether Jo Blain or Barber shot first. Blain's first shot struck Barber near the left nipple, lodging at the back just under the skin. Askey and appellant were without their coats when Jo Blain shot Barber. Neither Askey nor Roger Blain did or said anything, except after Jo Blain left the room Roger Blain stepped up to the body and placed his foot on the Winchester. When Askey said to Barber he or they wanted to see him, Askey, Roger Blain, and Barber started out, but Jo Blain did not start to go with them. These are substantially the facts immediately attending the homicide.

This conviction was had no doubt upon the theory that appellant, Jo Blain, and Askey had combined to murder Barber, or combined to commit some crime in the commission of which the reasonable and natural consequences would be the commission of the crime actually committed.

Let us briefly examine this doctrine. When two or more persons unite to accomplish some criminal object, whether through the physical volition of one or all—proceeding severally or collectively—each individual whose will contributes to the wrongdoing is in law responsible for the whole, the same as though performed by himself alone. We are not treating of principals and accomplices, but of combinations of persons in crime. Again, one person instigates another to commit a crime, or agrees with another to commit a crime, and the person so instigated commits a crime different from that he was instigated to commit, but one likely to be caused—that is, was the reasonable result of such instigation—the instigator is an accessory before the fact, and if present is a principal. And also, when one person combines with others or instigates others to commit a crime, and the person instigated or combined with commits a different crime, the instigator is not an accessory or principal to the crime, unless such crime was committed with his assent, or was a probable result of the instigation.

Does the proof establish with reasonable certainty that there was a combination between these parties to kill Barber? What is the evidence? Jo Blain, sometime before the homicide, had threatened Barber, and on one occasion Roger Blain was present. On the day of the homicide these parties were seen together, and on one occasion they were seen talking together. Askey and Roger Blain on the day of the homicide had purchased pistols, and they were all present when the killing occurred. When Barber was dead, Roger Blain stepped up to the body and put his foot on the gun. This is the evidence from which it is assumed that the parties had combined to kill the deceased. Will this evidence authorize this court to hold that proof of a combination has been made? We think not. Why? Because, (1) there is no evi-

dence that these parties ever said one word about Barber, except the threats of Jo Blain, made sometime before the killing. (2) Two of them were brothers, and Askey was a friend and associate of the Blains. (3) The pistols may have been purchased without reference to Barber. (4) Roger Blain was in his shirt sleeves, and no pistol was seen on his person at the time of the killing. It is certain neither he nor Askey exhibited a pistol at that time. If, when the pistols were purchased, the purchasers formed a design to take the life of Barber, it would be strange, indeed, that when that design was being consummated the implements purchased for such purpose were not used, exhibited, or, so far as the record discloses, within reach of the conspirators. Askey and appellant were present. They saw Barber going for the gun; saw him when he seized it. They heard Jo Blain tell him not to take or touch it, repeatedly. The crisis was at hand, yet they stand quietly by without a word, without a gesture. The proof does not show a combination to take the life of Barber.

Does the proof show a combination to commit a certain crime, and that Jo Blain committed a different crime from that agreed upon by Askey, Jo Blain, and appellant, and the crime committed was the reasonable result of the conspiracy? In this connection we insert a section of the trial court's charge, which we suppose was intended to give the rule of law in such case: "11. If, therefore, you believe from the evidence that G. C. Barber was shot and killed by J. N. Blain, as charged in the indictment, and that defendant Roger Blain was present at the time by a previous agreement between himself and Otho Askey and J. N. Blain for the purpose of doing an unlawful act, such as to commit a breach of the peace, or have a personal difficulty with Barber, and with no agreement to kill him, or do him such personal harm as might probably end in the death of Barber, then, if you find that J. N. Blain shot and killed Barber under such circumstances, you will find the defendant herein guilty of murder in the second degree, and assess his punishment," etc. "12. You are further instructed, that a defendant may be guilty of a wrong which he did not specifically intend, if it comes naturally, or even accidentally, from some other specific or general evil purpose. If, therefore, the parties charged in the indictment combined to do any unlawful act, and sought out Barber for that purpose, and the act of J. N. Blain proceeded according to the common plan, and terminated in a criminal result, though not the particular result intended by the parties, then all alike would be guilty, either of murder in the first or second degree, as the law and evidence may show." We have several serious objections to the eleventh paragraph. · What wrong, what unlawful act, is meant? What is meant by a personal difficulty? The charge is wanting in specification, and this is owing to the absolute failure of the evidence to indicate the wrong or unlawful act. If the evidence shows that the

parties intended to assault Barber, then the charge should have submitted the agreement or combination to assault Barber. If it tended to show a combination to commit any other offense or wrong, the offense should have been named in the charge. Why? So that the jury could intelligently determine whether the killing of Barber by Jo Blain was embraced in the conspiracy, or was the reasonable and natural result of such conspiracy.

To illustrate: If two persons combine to assault another with their fists, and one resorts to a deadly weapon, and kills without the other's knowledge or consent, would both be guilty of the homicide? Would both be guilty of murder? By no means. Bish. Crim. Law, sec. 637, and cases cited. This illustration demonstrates the errors in the charge of the court. Abstract propositions of law and general statements of principles contained in text-books will not suffice. The charge must apply the law to the very facts of the particular case.

We have seen that the proof does not establish with reasonable certainty that there was a conspiracy to kill Barber. What does it show? That Askey and Roger Blain desired Barber to step out of the saloon. For what purpose? If we look to what had passed between Barber and Askey, it is evident that it was for the purpose of producing the man who heard Barber make the remark about whipping Askey. This is the strongest light in which this matter can be placed for the State. If this was their purpose, there may not have been any intention to assault Barber, or have a personal difficulty with him. The intention of the parties may or may not have been harmless. This being so, no inferences can be drawn against the appellant, because presumptions can not be more certain than the facts from which they are made. Conceding, then, that the intention of Askey and appellant was to pursue the inquiry as to the threatened whipping of Askey, and that they had gone to the saloon for that purpose, and that Jo Blain shot and killed Barber under the facts stated above, would appellant be responsible for the homicide? Certainly not. Why? Because the killing was not embraced in the conspiracy, and it was not the reasonable and natural result of the conspiracy.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Davidson, J., absent.