**Charlie Carlos LOPEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Gregory JIMENEZ, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 45097, 45098.**

Court of Criminal Appeals of Texas.

June 21, 1972.

Rehearing Denied in No. 45098 July 28, 1972.

Robert M. Jones (Court Appointed on Appeal), and Shelton W. Booth, Dallas (Court Appointed on Appeal), for Charlie Carlos Lopez, and Melvyn Carson Bruder, Dallas, (Court Appointed on Appeal) for Gregory Jimenez, Jr.

Henry Wade, Dist. Atty., and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

These are appeals from convictions for murder, both obtained in a joint trial. The jury assessed the punishment for each at 250 years.

The appellants contend that the evidence is insufficient to support the conviction and that the pistol shown to have been used in the homicide was improperly introduced into evidence. Complaint is made by

Jimenez because an improper question was asked by the prosecutor.

Dean Jenkins, a designer and builder, occupied a building at 3121 South Routh Street in Dallas. At approximately 4:45 p. m., on June 20, 1970, he heard what he first thought were two backfires. After realizing that the sounds were quite loud, he investigated their source. Outside his window, from a distance of approximately twenty feet, he saw the appellants Lopez and Jimenez in the back yard of the adjoining vacant house scuffling with a third person. Either Lopez or Jimenez had money in his hand. The third man was hurt badly and was leaning. The two shoved him face down on the steps of the house. Jenkins saw the pockets of the third man turned "wrong side out." Jenkins then went upstairs to a telephone and called the police. When the two saw Jenkins, they appeared to be startled and ran. They got in a car which was red with black stripes. The license plate contained the letter "L". They had difficulty in starting the car.

Mary Taylor testified that at approximately 4:00 p. m. on the date in question Charlie Lopez came to her house at 3123 South Routh Street to visit her sister. When she told Lopez that the sister was bathing, he said that he would go to a lounge and come back later. Lopez left his car which was red with black stripes parked in front of her house. Approximately thirty minutes later he returned to the car and then walked up the street. Within ten minutes, he returned to her house, got in his car, and it "clicked" three or four times before he was able to start it. Shortly after that she received a telephone call from Lopez and he laughingly asked Mary to tell her sister that it was pretty hot on South Routh Street, because he had shot a man. She thought he was in a lounge at the time of the call because she could hear music in the background.

Officer G. W. Bolling of the Dallas Police Department testified that on the day in question he went to 3119 South Routh Street and saw Jenkins standing at the rear of the house. Guadalupe Flores Garcia was on the rear doorstep with bullet wounds in the front of the body.

The back yard was grown up with high grass and weeds. The officers who investigated at the scene got feathery-type stickers from the weeds on their clothing. The deceased had feathery-type stickers on his trousers and socks. His pockets were turned inside out. Two partially filled Schlitz beer cans were found in the back yard.

After an ambulance took the body away, Officer Bolling talked to Mary Taylor. He then went to La Capita Bar looking for the car. Outside the bar, he saw a red Chevelle which had a black stripe. The first letter on the license plate was "L" as had been described to him. On the passenger side, he saw a Schlitz beer can. On the floorboard and on both sides of the car there were stickers like those in the back yard at the South Routh Street address.

Officer Bolling and others then went inside. They saw three men, two of them fitting the description that had been given them. These two had stickers all over their socks, the same type that the officers got on their clothing. Officer Bolling took from the pocket of Lopez the keys to the vehicle he had seen outside and found a .38 caliber snub-nose revolver in the glove compartment.

A pathologist testified that death was caused by two gunshot wounds in the abdominal area. Two projectiles were recovered from the body. There were no other marks or injuries on the body. The blood in the body contained 0.234% alcohol which reflected that Garcia, the deceased, was intoxicated at the time of the homicide.

A firearms examiner testified that in his opinion the two bullets or projectiles which were shown to have been taken from the body of the deceased had been fired in the gun found in the car.

Neither of the appellants testified nor offered any evidence.

In summary, the evidence shows that shortly after what was apparently two gunshots the appellants were scuffling with the deceased. One of them had cash in his hand. Upon seeing Jenkins, both of them fled. When two or more persons agree to commit robbery with a deadly weapon and the victim is killed, both are guilty of murder with malice. See Article 42, Vernon's Ann.P.C. There was sufficient evidence, if not direct at least circumstantially, to show an attempt, if not robbery.

Officer Bolling testified without objection that the name of the deceased was Guadalupe Flores Garcia. Again, without objection, he testified that he learned that the deceased was a Mexican National named Guadalupe Flores Garcia. The contention that the deceased was not identified is overruled.

We find that the jury had sufficient evidence to conclude that both the appellants were guilty of the homicide.[1]

Next, it is contended that reversible error was committed on direct examination of Officer Bolling when he was testifying about finding the three men in the lounge. He had just testified, "The third subject objected pretty strenuously that he did not know anything about the situation." He was then asked, "All right. Did either of these deny it or object to it?" During the discussion that followed counsel for the appellants objected. The question should not have been asked. It was withdrawn. There was no request that the jury be instructed not to consider the question. A motion for mistrial was overruled.

Ordinarily, the mere asking of a question which is not answered does not constitute reversible error. See Mirowitz v. State, Tex.Cr.App., 449 S.W.2d 475.

The answer of Officer Bolling that the third man protested his innocence was not responsive. There was no request that the jury be instructed not to consider it.

Counsel for the State should not have attempted to carry the matter further and show silence of one under arrest as evidence of guilt. Under different circumstances such conduct would call for a reversal.

Lastly, it is contended that reversible error was committed because the pistol was taken from the car of Lopez as a result of an illegal search. It is not necessary to determine the legality of the search, because no objection was made when the pistol was offered into evidence. When testimony about the taking of bullets from the gun and the result of the ballistics tests was admitted, no objection was made. When the bullets were offered into evidence, counsel for both appellants stated they had no objections.

In Milligan v. State, Tex.Cr.App., 465 S.W.2d 157, a gun was introduced into evidence without objection. This Court held there must be a timely objection to preserve error of illegally obtained evidence. See Slaughter v. State, Tex.Cr.App., 439 S.W.2d 836.

Absent objections or a showing that one did not have an opportunity to object at the time the evidence was offered, nothing is presented for review. Brown v.

---

1. At the penalty stage of the trial, it was shown that Lopez had been convicted for the felony offense of carrying a pistol after having been convicted for assault with intent to murder with malice as denounced by Article 489c, Section 1, V.A.P.C. In 1965, he had been convicted for felony theft. Also, he had been convicted for possessing marihuana and for burglary, both in 1961.

Jiminez had been convicted for murder with malice in 1966.

State, Tex.Cr.App., 460 S.W.2d 925. See United States v. Lazarus, 425 F.2d 638 (9th Cir. 1970), for a discussion of waiver of constitutional questions for failure to object, and United States v. Thomas, 429 F.2d 407 (5th Cir. 1970).

The record contains no reversible error. The judgments are affirmed.